| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-------------------------------------------------------------- X<br>DIVERSE PARTNERS, LP, *individually and on behalf of all others similarly situated*,<br><br>                                        Plaintiff,<br><br>            -against-<br><br>AGRIBANK, FCB,<br><br>                                        Defendant.<br>-------------------------------------------------------------- X | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: 9/14/2017<br><br><br>16-CV-9526 (VEC)<br><br>OPINION & ORDER |

VALERIE CAPRONI, United States District Judge:

In this putative class action, Plaintiff Diverse Partners, LP, an investment fund, has sued Defendant AgriBank, FCB ("Defendant" or "AgriBank") for breach of contract for its redemption of notes ("Notes") based upon a purported regulatory event by the Farm Credit Administration. AgriBank has moved to dismiss on the ground that Plaintiff lacks standing to sue under the contract. For the following reasons, the Court DENIES AgriBank's motion to dismiss.

## BACKGROUND

AgriBank issued the Notes, which were governed by a Fiscal Agency Agreement ("FAA") and the Form of Security ("Form of Security" or "FS"), which was attached as Exhibit A to the FAA (collectively, "Agreement"). Vigna Decl., Ex. B.[1] The Agreement allowed AgriBank to redeem the Notes prior to maturity upon the occurrence of a "Regulatory Event."

---

[1] The Court uses the following abbreviations herein: Notice of Removal is "Notice of Removal" (Dkt. 1); Amended Complaint is "Am. Compl." (Dkt. 11); Defendant's opening brief is "Mem." (Dkt. 19); Declaration of Jason C. Vigna in support of Defendant's motion is "Vigna Decl." (Dkt. 18); Plaintiff's opposition brief is "Opp." (Dkt. 20); Declaration of Gordon Z. Novod in support of Plaintiff's opposition to Defendant's motion is "Novod Decl." (Dkt. 21); and Defendant's reply is "Reply" (Dkt. 22).

1

Am. Compl. ¶¶ 9–11. A "Regulatory Event" was defined in the Form of Security as AgriBank's receipt of a notification from the Farm Credit Administration of certain events. FS ¶ 6(a).

AgriBank determined that a "Final Rule" announced by the Farm Credit Administration constituted a Regulatory Event, and AgriBank redeemed the entire outstanding principal of the Notes. Am. Compl. ¶¶ 13–19. On the date of the AgriBank redemption, Plaintiff was the beneficial owner of $30,750,000 of the Notes. Am. Compl. ¶ 38. Cede & Company ("Cede"), nominee of the Depository Trust Company ("DTC"), was the registered holder of all outstanding Notes, including Plaintiff's Notes. Am. Compl. ¶¶ 38–40. At the request of BNP Paribas Prime Brokerage Inc. ("BNP Paribas"), which managed the account that held Plaintiff's Notes, Cede "authorized the Plaintiff to commence and prosecute litigation, including collecting on its claims raised therein, against AgriBank relating to breaches of its obligations under documents relevant to the Notes, which action(s) Cede & Co., as holder of the Notes, is entitled to take." Am. Compl. ¶¶ 41, 43; *see also* Novod Decl., Ex. B at 2. Cede wrote that although it was "furnishing this authorization as the holder of record of the Notes, it does so solely at the request of [BNP Paribas] and only as a nominal party for the true party in interest, [Plaintiff]," and that it has no other interest or responsibility in this case. Novod Decl., Ex. B at 2.

Plaintiff sued AgriBank in New York Supreme Court, and AgriBank removed the case to federal court.[2] Plaintiff alleges that the Final Rule did not constitute a Regulatory Event and that AgriBank's redemption was a breach of contract and a breach of the implied covenant of good faith and fair dealing. Defendant has moved to dismiss the Amended Complaint arguing that Plaintiff lacks standing to sue for breach of the Agreement. Dkt. 17.

---

[2] Defendant removed the case, *inter alia*, based on diversity jurisdiction. Notice of Removal ¶¶ 10–12.

**DISCUSSION**

Defendant argues that Plaintiff, as a beneficial owner of the Notes, does not have standing to sue for breach of the Agreement. Plaintiff argues that the Agreement does not preclude its right to sue, and to the extent that Plaintiff lacks standing, the Cede authorization confers on Plaintiff standing to sue. For the following reasons, Defendant's motion to dismiss is denied.[3]

The crux of this dispute is whether the Agreement allows persons other than the registered holders of the Notes to sue for breach of contract. Under New York law,[4] "[i]n a dispute over the meaning of a contract, the threshold question is whether the contract is ambiguous." *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011). "[A] contract is unambiguous if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion." *Id*. On the other hand, a contract is ambiguous "if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Id*.

The FAA sets forth the remedies available under the contract. FAA § 6. This remedies section states: "Holders of the Securities may enforce this Agreement or the Securities only in

---

[3] The Court notes that AgriBank characterizes Plaintiff's purported lack of "standing" as a "jurisdictional defect" depriving this Court of subject matter jurisdiction. *See* Mem. 14–15. But AgriBank conflates Plaintiff's contractual standing to sue under the Note with Plaintiff's Article III standing. Clearly, Plaintiff has Article III standing: Plaintiff alleges that it suffered an injury in fact by AgriBank's purported breach of the Agreement, and Plaintiff alleges that its injury is redressable through damages and is traceable to AgriBank. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (requirements for Article III standing). AgriBank does not argue that Plaintiff fails to satisfy these Article III requirements. Rather, the issue in this case is whether Plaintiff has *contractual* standing, i.e., standing to enforce the contract.

[4] The Fiscal Agency Agreement and Form of Security provide that the contracts are governed by New York law. FAA § 11(a); FS ¶ 15.

the manner set forth below . . . ." *Id*.[5]  The remedies section further provides, "In the event that the Bank fails to perform any of its other obligations under this Agreement or the Securities, each Holder of the Securities may pursue any available remedy to enforce the performance of any provision of this Agreement or the Securities . . . ." *Id*. § 6(b).  Thus, the plain language of the contract confers the right to pursue remedies for breach of contract on the "Holder" of the Notes.  A "Holder" is defined as a "Person in whose name [a] Certificated Security is registered on the Security Register . . . ." *Id*. § 3(b).[6]  Neither the FAA nor the Form of Security expressly provides that a person other than a Holder may sue for breach of those contracts.[7]  By the same token, the FAA and the Form of Security also do not expressly preclude anyone other than the Holder from suing for breach of those contracts.

Defendant argues that under a plain reading of the Agreement, because "Holders of the Securities" may enforce the Agreement, and the Agreement does not expressly provide for any non-Holder to enforce the Agreement, Plaintiff lacks standing to sue for breach of the Agreement because Plaintiff is a beneficial owner of the Notes but not a Holder.  Mem. 9–11.  Plaintiff alleges that it is the beneficial owner of the Notes and that Cede is "the holder of record" of Plaintiff's Notes, Am. Compl. ¶¶ 38–39; Plaintiff does not dispute that it is not a Holder.

---

[5]     The Fiscal Agency Agreement defines "Securities" as "the initial issuance of $500,000,000 aggregate principal amount of [] 9.125% Subordinated Notes due 2019 to be issued in fully registered form without interest coupons."  FAA § 2(a)(i).

[6]     The FAA anticipates that the Notes will be represented either by a Global Security, which will be held by DTC or a DTC nominee such as Cede, or by a Certificated Security, which is a Note that is registered in the name of "a person other than the DTC, another nominee of DTC or a successor of DTC or its nominee."  FAA § 2(a)(ii).  Plaintiff's Notes are represented by a Global Security, not a Certificated Security.  Am. Compl. ¶ 96.

[7]     The remedies provision states: "Holders of the Securities may enforce this Agreement or the Securities only in the manner set forth below . . . ."  FAA § 6.  It is not entirely clear whether that provision is intended to refer only to defined "Holders" (i.e., entities that hold Certificated Securities), or whether the capital H is simply a function of Holders being the first word of the sentence.  Inasmuch as Defendant's argument appears to presuppose that Cede would have a remedy for breach, the Court presumes that all holders of the Securities (and not just Holders of Certificated Securities) may pursue remedies under the Agreement.

4

Plaintiff points to no provision in the Agreement that expressly confers upon persons other than Holders the right to enforce the Agreement. Rather, Plaintiff contends that the Agreement does not preclude its right to sue because the FAA's remedies section does not apply to Plaintiff as a non-Holder and because the remedies section further provides that "[n]o right or remedy herein conferred upon or reserved to the Holders is intended to be exclusive of any other right or remedy, and every right and remedy shall . . . be cumulative . . . ." FAA § 6(d).

Although Defendant's interpretation of the Agreement has facial appeal, the Court finds that the Agreement is ambiguous as to whether beneficial owners of Global Securities have standing to sue to enforce the Agreement. Section 2(a)(ii)(iii) of the FAA provides that a Global Security can be transferred to and registered in the name of a non-DTC entity as a Certificated Security if:

> (iii) an owner of Securities has initiated a judicial proceeding to enforce the owner's rights under the Securities in court, and counsel has advised the owner that it is necessary to have a Certificated Security representing such owner's interest in the Securities registered in the name of such owner in order to prosecute such proceedings.

FAA § 2(a)(ii)(iii). That provision clearly anticipates that beneficial owners of Global Securities—not just Holders—have the right under the contract to enforce its provisions.[8]

Defendant's interpretation, which relies on the remedies section's reference to Holders only, would render Section 2(a)(ii)(iii) of the FAA nonsensical. It is well-settled that under New York law, "an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible." *Galli v. Metz*,

---

[8] Notably (and oddly) it gives a beneficial owner the right to obtain a Certificated Security only after it has initiated a proceeding and its counsel (not the Court) has advised that it is necessary to have a Certificated Security in order to pursue the litigation. This provision would appear to have been drafted by a corporate attorney who failed to recognize that he had placed the cart (litigation) before the horse (possession of a Certificated Security).

973 F.2d 145, 149 (2d Cir. 1992) (internal quotation marks and citation omitted). Because it is not obvious how FAA § 6 and FAA § 2(a)(ii)(iii) can be reconciled, this Court concludes that, at a minimum, the Agreement is ambiguous relative to whether a beneficial owner of a Global Security has a right to sue for breach of the Agreement. *See Diamond Castle Partners IV PRC, L.P. v. IAC/InterActivecorp*, 82 A.D.3d 421, 422 (1st Dep't 2011) (declining to construe the contract to "ignore the clear, specific provisions of the [contract] recognizing plaintiffs' rights under the agreement").

The Court would be inclined to deny Defendant's motion to dismiss based on the ambiguity in the contract alone, but the authorization Plaintiff obtained from Cede provides an additional basis to allow the case to proceed. Cede sent a letter to AgriBank stating that Cede "authorizes [Plaintiff] to commence and prosecute litigation, including collecting on its claims raised therein, against AgriBank relating to breaches of its obligations under documents relevant to the notes, which action(s) Cede, as holder of the Notes, is entitled to take." Novod Decl., Ex. B at 2. Defendant argues that the Cede authorization does not permit Plaintiff to sue for breach of the Agreement. The Court holds that, particularly in light of the ambiguity in the FAA, the Cede authorization is sufficient to give Plaintiff standing.

Plaintiff argues that under *Applestein v. Province of Buenos Aires*, 415 F.3d 242 (2d Cir. 2005), and its progeny, a beneficial owner of notes has standing to sue for breach of the notes if the beneficial owner obtains "permission to sue from the registered holder." Opp. 10 (quoting *Applestein*, 415 F.3d at 245). In *Applestein*, the defendant argued that the indenture reserved the right to sue to the registered holder only, and that the plaintiff, who was a beneficial owner but not the registered holder, did not have standing to sue. *Applestein*, 415 F.3d at 245. The Second

Circuit held that the plaintiff did have standing based on the plaintiff's receipt of authorization to sue from the registered holder. *Id*.

AgriBank argues that *Applestein* is distinguishable because the *Applestein* contract, unlike the Agreement, expressly provided that DTC, the record holder of the notes, could "grant proxies or otherwise authorize its participants (or persons holding beneficial interests in the Global Registered Notes through such participants) to exercise any rights of a holder or take any other actions which a holder is entitled to take under the Indenture or the Notes." Mem. 11 n.5 (quoting *Applestein*, 415 F.3d at 243–44); *see also* Reply 6. The Second Circuit found that the *Applestein* plaintiff had standing "on the ground that Applestein obtained, as provided in the notes' Offering Memorandum, permission to sue from the registered holder." *Applestein*, 415 F.3d at 245. In *Springwell Navigation Corp. v. Sanlius Corporación, S.A.*, 81 A.D.3d 557 (1st Dep't 2011), which followed *Applestein*, the First Department reached a similar conclusion. 81 A.D.3d at 558 ("As the indenture expressly permits the registered holder to assign its right to institute any legal action to an appointed proxy, and plaintiff has obtained the registered holder's authorization to sue in its stead, plaintiff's status has changed, and its prior lack of capacity has been cured." (citing *Applestein*, 415 F.3d at 242)).

Although no analogous proxy-or-authorization provision exists in the Agreement, courts in this District have extended *Applestein* to contracts that do not include such a provision and that include provisions more restrictive of standing than the Agreement. For example, in *Royal Park Investments SA/NV v. Deutsche Bank National Trust Co.*, the at-issue contracts contained "negating clauses barring enforcement by third-party beneficiaries." No. 14-CV-4394 (AJN), 2016 WL 439020, at *2 (S.D.N.Y. Feb. 3, 2016).[9] Nevertheless, *Royal Park* applied *Applestein*

---

9  The relevant contract provision stated, "Nothing in this Agreement or in the Certificates, expressed or implied, shall give to any Person, other than the Certificateholders and the parties hereto and their successors

and concluded that a beneficial owner of the at-issue securities had standing to sue for breach of contract because the plaintiff had been authorized by the certificateholder, Cede & Co., to bring suit and "exercise any and all rights" Cede was entitled to take. *Id*. at *2–3 (citing *Applestein*, 415 F.3d at 245). Because "[u]nder New York law, contracts are freely assignable absent language which expressly prohibits assignment," *Royal Park* reasoned that "a beneficial owner who lacks standing . . . may receive authorization to sue from the registered Holder, even if the [contract] does not specifically provide for such authorization." *Id*. at *3 (internal marks and citation omitted). *Royal Park* held that the plaintiff's authorization from Cede, which contains language similar to the authorization here, was sufficient to confer standing to sue on the plaintiff. *Id*. at *2–3.[10]

Other courts in this District have held similarly. *See Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*, 172 F. Supp. 3d 700, 712 (S.D.N.Y. 2016) ("Courts in this district have allowed plaintiffs to seek authorization from Cede & Co. *even when the contract does not specifically authorize them to do so* because under New York law, contracts are freely assignable absent language that prohibits assignment." (emphasis added) (collecting cases)); *see also Royal Park Investments SA/NV v. HSBC Bank USA, Nat'l Ass'n* (hereafter, "*HSBC*"), 109 F. Supp. 3d

---

hereunder, any benefit or any legal or equitable right, remedy or claim under this Agreement." ECF 56, Ex. E § 12.10, *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 14-CV-4394 (AJN).

[10] In *Royal Park*, the Cede authorization stated, "CEDE & Co. . . . hereby authorizes . . . [Plaintiff] to take any and all actions and exercise any and all rights . . . that CEDE & Co. . . . is entitled to take." *Id*. at *2. Here, the Cede authorization states, "Cede & Co. authorizes [Plaintiff] to commence and prosecute litigation, including collecting on its claims raised therein, against AgriBank relating to breaches of its obligations under documents relevant to the Notes, which action(s) Cede & Co., as holder of the Notes, is entitled to take." Novod Decl., Ex. B at 2. Although the scope of the authorization in *Royal Park* was broader the one here, the differences between the authorizations are not material: both authorize the plaintiff to take actions (in *Royal Park*, any and all actions; here, to bring suit) that Cede is entitled to take. Notably, both state that Cede "authorizes" (rather than "assigns") the plaintiff to take actions and exercise rights that Cede is "entitled to take."

8

587, 607 (S.D.N.Y. 2015) (beneficial owners of the notes can cure lack of standing if they receive authorization from Cede, the registered holder of the notes (citing *Applestein*)).

In *Royal Park*, *Phoenix Light* and *HSBC*, the district courts were presented with the argument that *Applestein* was distinguishable because the *Applestein* contract, unlike the at-issue contracts in those cases, expressly permitted the registered holders to provide an authorization or proxy to other persons to sue. *See* ECF 69 at 6, *Royal Park*, 14-cv-4394-AJN-BCM; ECF 42 at 9, *Phoenix Light*, No. 14-cv-10103 (JGK); ECF 35 at 20, 20 n.31, *HSBC*, No. 14-cv-8175-SAS. The district courts were not persuaded by that distinction and held that under *Applestein*, the beneficial owner has standing to sue if it obtains authorization from the registered holder, even if the plaintiff obtains such authorization after it has commenced litigation. *See, e.g.*, *HSBC*, 109 F. Supp. 3d at 607, 607 n.111. Although there is a solid handful of district court decisions applying *Applestein* to allow authorization from the registered holder to confer standing on a beneficial owner, even in the absence of a contractual provision expressly allowing such authorization and even in the presence of negating clauses, neither the Second Circuit nor the New York Court of Appeals has grappled with this issue.

Defendant cites no case, and this Court has found none, that has held that a beneficial owner's authorization to sue from the registered holder is insufficient to establish contractual standing. On the other hand, courts have found that Cede's authorization to a beneficial owner was sufficient to provide the beneficial owner with standing in the context of contracts more restrictive of standing than the Agreement. *See Royal Park*, 2016 WL 439020, at *2–3; *Phoenix Light*, 172 F. Supp. 3d at 711–12; *HSBC*, 109 F. Supp. 3d at 607–08.[11] This Court finds no basis

---

[11] Courts also have found that the beneficial owner has standing if it obtains authorization to sue from Cede & Co., the registered holder, in the context of contracts that do not appear to have negating clauses. *See, e.g.*, *NML Capital, Ltd. v. Republic of Arg.*, No. 05 CIV. 2434 (TPG), 2006 WL 1294853, at *2 (S.D.N.Y. May 10, 2006) (beneficial owner of certain bond indebtedness has standing to sue because it obtained authorization from Cede &

9

to disagree with the other decisions in this District holding that the beneficial owner has standing if it obtains authorization from the registered holder, Cede; the reasoning of those courts, which found that the plaintiff had standing in circumstances more difficult than those present in this case, is persuasive.

In addition, as a practical matter, the beneficial owner is the only person that has an interest in pursuing any rights or remedies under the Notes; Cede, as a street name, has no interest in enforcing the notes. Indeed, Cede may not even have Article III standing to bring suit for breach of the Agreement because, if Cede has no actual interest in the Notes beyond just holding them in the form of a Global Security for others, Cede may not have suffered any injury in fact from breach of the Agreement. *See, e.g.*, *United States v. $829,422.42, Currency, U.S.*, 561 F. App'x 100, 100 (2d Cir. 2014). If, armed with authorization from the registered holder, a beneficial owner cannot sue for breach of contract, then who would enforce the contract?

Defendant contends that *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11 (2d Cir. 1997), precludes a finding that Plaintiff has standing because, although Plaintiff may have received "authorization" from Cede, it did not receive an "assignment," which requires that "the owner [] manifest an intention to make the assignee the owner of the claim," *see* 106 F.3d at 17 (internal marks and citation omitted). Defendant contends that under *Advanced Magnetics*, the Cede authorization letter is akin to a "power of attorney," i.e. "[a] provision by which one person grants another the power to sue on and collect on a claim," and that "standing alone, a power of attorney does not enable the grantee to bring suit in his own name." *Id*. at 17–18.[12]

---

Co., the registered holder of the at-issue bonds (citing *Applestein*)); *FFI Fund, Ltd. v. Republic of Arg.*, No. 05 CIV. 3328 (TPG), 2006 WL 435734, at *2 (S.D.N.Y. Feb. 23, 2006) (same).

[12]  *Advanced Magnetics* ultimately held that a letter agreements conferring on the plaintiff "the power to commence and prosecute to final consummation or compromise any suits, actions or proceedings . . . arguably gave [the plaintiff] power of attorney to bring suit in the names of the individual selling shareholders, but [] did not purport to transfer title or ownership to the plaintiff," in part because the letter agreements reserved certain rights of

The Court is not convinced that the Cede authorization is a mere "power of attorney." Defendant cites no case that has interpreted *Advanced Magnetics* to obviate a beneficial owner's standing in circumstances where the beneficial owner has been "authorized" by the registered holder to sue for breach of the contract. The Cede letter "authorizes [Plaintiff] to commence and prosecute litigation . . . against AgriBank relating to breaches of its obligations under documents relevant to the Notes, which action(s) Cede & Co., as holder of the Notes, is entitled to take." Novod Decl., Ex. B at 2. The letter further states that Plaintiff is "the true party in interest," that Cede "has no interest in this matter other than to take those steps that are necessary to ensure that [Plaintiff is] not denied [its] rights as beneficial owner[] of the Notes," and that Cede "assumes no further responsibility in this matter." Novod Decl., Ex. B at 2. *Royal Park* upheld language substantially similar to Cede's language here as sufficient to provide a beneficial owner with standing to sue. *See Royal Park*, 2016 WL 439020, at *2–3 (quoting Cede's authorization letter ("CEDE & Co. . . . hereby authorizes . . . [Plaintiff] to take any and all actions and exercise any and all rights . . . that CEDE & Co. . . . is entitled to take.")). This Court agrees with the holding in *Royal Park* that Cede's authorization is sufficient to provide standing to a beneficial owner.

In addition, as discussed *supra*, the Agreement is ambiguous as to whether a beneficial owner has standing to sue to enforce the Agreement in its own right. If the Agreement contemplates that a beneficial owner may "initiate[] a judicial proceeding to enforce the *owner's* rights under the [Notes] in court," *see* FAA § 2(a)(ii)(iii) (emphasis added), then the Agreement permits the owner to assert its own rights under the Notes, rather than any rights assigned by the registered holder. Put differently, the beneficial owner's suit is for damages sustained to the owner's interests, not for damages to the registered holder's interests.

---

the owner, i.e., the right to receive a pro rata share of litigation proceeds and the right to terminate the plaintiff's authority to pursue the owner's claim. *Id*. at 18.

In short, the Court denies AgriBank's motion to dismiss in light of the Agreement's ambiguity and finds that Plaintiff has standing, at a minimum, because it obtained authorization to sue from Cede, the registered holder of the Notes. Under *Applestein*, beneficial owners have standing to sue if they obtain permission to sue from the registered holder. *See Applestein*, 415 F.3d at 245. Plaintiff has done that here.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED. The parties must appear for a conference on **October 20, 2017, at 10:00 a.m.** to set a discovery calendar in this case. The Clerk of Court is respectfully directed to terminate Docket Entry No. 17.

**SO ORDERED.**

**Date: September 14, 2017**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**